J-S16006-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RONALD BUTLER BURTON | : | |
| | : | |
| Appellant | : | No. 843 MDA 2021 |

Appeal from the PCRA Order Entered June 8, 2021
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0005456-2009

BEFORE: PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.: **FILED: JULY 7, 2022**

This case has been before our Court multiple times. During the life of this case, Ronald Butler Burton has had his direct appeal rights reinstated *nunc pro tunc* and has been resentenced three times for, *inter alia*, conspiracy to commit homicide and illegally possessing a firearm. After his judgment of sentence resulting from the third resentencing was affirmed on direct appeal, Burton filed a petition pursuant to the Post Conviction Relief Act, 42 Pa. C.S.A. §§ 9541-9546. The Dauphin County Court of Common Pleas entered an order denying Burton's petition without holding an evidentiary hearing, and Burton now appeals *pro se* from that order. In this appeal, Burton raises or attempts to raise claims that his prior counsel were ineffective for failing to challenge

---

[*] Retired Senior Judge assigned to the Superior Court.

trial/appellate counsel's representation in half a dozen ways. He alleges he was entitled to an evidentiary hearing on all of his ineffectiveness claims, and he also claims he was entitled to relief on the basis of exculpatory after-discovered evidence pursuant to Pa.C.S.A. § 9543(a)(2)(vi). After review, we find that none of these claims offer Burton any basis for relief, and we therefore affirm.

Burton was arrested and charged with various offenses, including homicide, after the police found Brandon Granthon bleeding from a gunshot wound to the chest on Mulberry Street in Harrisburg in the early morning hours of May 5, 2009. Granthon subsequently died from the wound. The matter proceeded to a jury trial, at which Burton was represented by Jonathon Crisp, Esq.

The Commonwealth presented several witnesses at trial, including Preston Burgess. Burgess testified that he brokered a deal with Burton to sell Granthon crack cocaine. The transaction took place on the evening of May 4, 2009. Burgess recounted that, shortly after the transaction, he recontacted Burton because Granthon believed Burton had shorted Granthon on the amount of crack Burton had sold him. Burgess testified that Burton agreed to refund Granthon his money. According to Burgess, Burton came to Burgess's house and became angry when Granthon called Burgess and asked Burgess to have Burton show him the refund money. Nonetheless, Burton left Burgess's house with a man named Slim in order to meet Granthon at an

arranged spot near Burgess's house. A few minutes after Burton left the house, Burgess went to a nearby convenience store and heard a volley of gunshots.

Jeffrey Lynch also testified as a witness for the Commonwealth. Lynch stated that in the early morning hours of May 5, 2009, he was smoking crack with a person known as "Jersey" near an alley close to Mulberry Street. He recounted he saw two men in hoodies quickly walking down the alley, one of which Lynch recognized as Burton, who had previously sold Lynch crack. Lynch testified he then saw one of the men duck behind a car and the other behind a telephone pole. He heard Burton say, "there he go." N.T. Jury Trial, 1/25/11, at 142. At that point, Lynch saw a third man dressed all in black walking by, and, according to Lynch, the two men emerged from their hiding places and ran after the third man. Concerned, Lynch began walking in the opposite direction when he heard gunshots fired from different caliber guns. Lynch then saw Burton and his companion run back down the alley and flee the area in a SUV. Lynch later identified Burton from a photo array as one of the two men he saw following the third. He also identified Burton at trial as the man he saw and recognized in the alley.

Greta McCallister, the person known as "Jersey" who was smoking crack with Lynch at the time in question, stated that she also saw two men in the alley heading towards Mulberry Street. McCallister testified that each of the two men had their hoods up and were carrying a gun. After the men left her

line of vision, she heard gunshots, and afterwards, she saw the two men get in a SUV and drive away. McCallister was not able to identify either one of the two men.

Detective Ryan Neal of the Harrisburg Bureau of Police testified about his investigation into the murder, and specifically what he discovered from Burton's and Granthon's cell phone records. Those records showed that 26 calls were made between Granthon and Burton between May 4 and May 5, 2009, 17 of which occurred in the early morning hours of May 5, 2009. Detective Donald Heffner, also of the Harrisburg Bureau of Police, testified about the locations of those cell phone calls. According to Heffner, a call made from Burton's cell phone at 1:13 a.m. on May 5, 2009, could be approximated to have originated less than half of a mile from the shooting.

Meanwhile, Burton did not deny that he sold crack to Granthon on May 4, 2009. Instead, the defense put forth by Burton was that he was not present at the shooting, but that whoever did commit the killing had been justified in using deadly force. **See** N.T. Voir Dire, Opening Statements and Closing Arguments, 1/26/11, at 69-70 (opening remarks of defense counsel laying out the defense and the alternative defense); **id.** at 71, 74, 65-86 (closing remarks summarizing the defenses).

Trial counsel called Georgio Rochon to testify. Rochon stated that he lived on Mulberry Street and at approximately one a.m. on May 5, 2009, he heard gunshots and went to a screen door to see what was happening.

According to Rochon, he saw a somewhat stocky, light-skinned Black male in a hoodie. He was carrying a handgun and running in the alley from the direction of Mulberry Street. Rochon testified that Burton was too tall, too stocky and too dark to be the person he saw.

Following the three-day trial, the jury found Burton guilty of first-degree murder, conspiracy, possession with intent to deliver, illegally possessing a firearm, carrying a firearm without a license, and recklessly endangering another person. The court sentenced him to, *inter alia*, life in prison on the homicide charge.

Burton filed a notice of appeal, starting what this Court has described as a "procedural quagmire." **See Commonwealth v. Burton**, 1873 MDA 2016 (Pa. Super. July 26, 2017) (unpublished memorandum). In a decision filed on January 20, 2012, our Court vacated Burton's judgment of sentence on the homicide charge and remanded for a new trial on that charge only. **See Commonwealth v. Burton**, 385 MDA 2011 (Pa. Super. January 20, 2012) (unpublished memorandum). In doing so, this Court found that although the Commonwealth had presented sufficient evidence to disprove Burton's defense theory that the shooting had been justified, we also found that the trial court erred in declining to charge the jury on unreasonable belief voluntary manslaughter pursuant to 18 Pa.C.S.A. § 2503(b). In addition to vacating the homicide sentence, this Court also vacated the sentences on Burton's remaining five convictions on the basis that the decision risked

- 5 -

altering the trial court's overall sentencing scheme. We remanded for resentencing on those five convictions.

The Commonwealth elected not to retry Burton for the homicide charge. On March 30, 2012, the trial court resentenced Burton on the remaining five convictions, but because Burton's petition for allowance of appeal from this Court's January 20, 2012 decision was still pending, that sentence was declared a nullity. **See Commonwealth v. Burton**, 1936 MDA 2012 at * 3 (Pa. Super. July 26, 2013) (unpublished memorandum). The Supreme Court thereafter denied the petition for allowance of appeal and the trial court once again resentenced Burton, this time to an aggregate sentence of 22 ½ to 50 years' incarceration. Burton appealed. This Court affirmed the judgment of sentence after concluding that Burton had not preserved his claims challenging the discretionary aspects of sentence at the resentencing hearing or in a post-sentence motion. **See id.** at * 5. Attorney Crisp continued to represent Burton throughout this direct appeal process.

On March 27, 2014, Burton filed a *pro se* PCRA petition seeking reinstatement of his right to file a post-sentence motion *nunc pro tunc*. Counsel was appointed, but Burton subsequently retained private counsel, Theodore Tanski, Esq., and Tanski filed a supplemental PCRA petition in December 2014. The PCRA court entered an order on February 10, 2015, granting the petition in part and denying it in part. The court granted the petition insomuch as it granted Burton leave to file a post-sentence motion

*nunc pro tunc*. It denied the remainder of the petition, finding that Burton's other claim in the PCRA petition, that he was entitled to relief on the basis of the allegedly after-discovered evidence of two other eyewitness statements, was meritless.

On March 10, 2015, Burton filed a post-sentence motion with the trial court and also filed a notice of appeal from the February 10, 2015 order. Attorney Tanski was permitted to withdraw, and the trial court appointed appellate counsel, Jennifer Tobias, Esq. On appeal, this Court affirmed the part of the PCRA court's February 10, 2015 order restoring Burton's direct appeal rights *nunc pro tunc*. **See Commonwealth v. Burton**, 457 MDA 2015 at *9 (Pa. Super. March 10, 2016) (unpublished memorandum). However, we vacated the remainder of that order on the basis that once the PCRA court reinstated Burton's direct appeal rights, it no longer had jurisdiction to address the merits of any remaining claims. **See id.** at *7. We also quashed the appeal to the extent that it purported to challenge the disposition of the post-sentence motion, as the motion was still pending in the trial court. **See id.** at * 9.

Burton's post-sentence motion was denied by operation of law. Burton filed a direct appeal, but subsequently withdrew that appeal. **See** Praecipe for Discontinuance, 636 MDA 2016, 5/27/16 (single page). The trial court, pursuant to Burton's request, ordered a pre-sentence investigation ("PSI") report for the first time. With the benefit of that PSI report, the trial court

resentenced Burton to an aggregate term of 22 ½ to 45 years' incarceration. This Court affirmed the judgment of sentence after rejecting Burton's three claims challenging the discretionary aspects of that sentence. *See Burton*, 1873 MDA 2016 (Pa. Super. July 26, 2017) (unpublished memorandum). Our Supreme Court denied Burton's petition for allowance of appeal.

Burton filed a timely *pro se* PCRA petition, alleging three claims of prior counsels' ineffectiveness.[1] Appointed counsel, Shannon Sprow, Esq., filed a supplemental PCRA petition. The supplemental petition maintained that although two of Burton's claims in his *pro se* PCRA petition were meritless, his third claim warranted relief. The PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without a hearing, and subsequently dismissed the petition. Burton filed this appeal and sought to proceed *pro se*.

---

[1] The PCRA court found that although Burton's PCRA petition was filed two days after the one-year deadline under the PCRA, it was timely under the prisoner mailbox rule. *See* Trial Court Opinion, 12/29/20, at 8. We see no error in this conclusion. While there is no envelope in the record showing the postmark of when the prison authorities mailed Burton's petition, both the petition and certificate of service are dated before the applicable deadline. Additionally, the petition was filed only two days after the applicable deadline, which allows for the presumption that it was mailed before the deadline, especially "[g]iven the inherent delays associated with mail delivery." *Commonwealth v. Betts*, 240 A.3d 616, 619 n.5 (Pa. Super. 2020) (finding that a *pro se* filing was timely when the certificate of service attached to the filing was dated before the filing's deadline and the filing was received only two days after the deadline).

Following a **Grazier**[2] hearing, the court granted his request. Burton then filed his *pro se* brief with this Court alleging, *inter alia*, that the PCRA court erred in dismissing his PCRA petition and that, at the very least, he was entitled to an evidentiary hearing.

Our review of an order dismissing a PCRA petition is limited to examining whether the PCRA court's determinations are supported by the record and the court's decision is free of legal error. **See Commonwealth v. Shaw**, 217 A.3d 265, 269 (Pa. Super. 2019). Although we give great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record, we apply a *de novo* standard of review to the PCRA court's legal conclusions. **See Commonwealth v. Benner,** 147 A.3d 915, 919 (Pa. Super. 2016).

Further, the PCRA court is not required to hold an evidentiary hearing prior to dismissing a petition as a petitioner is not entitled to a PCRA hearing as a matter of right. **See Shaw,** 217 A.3d at 269. The PCRA court can decline to hold a hearing if there is "no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings." **Id**.

_____

[2] **See Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

We address Burton's underlying claims of trial/appellate counsel's[3] ineffectiveness first. To be eligible for relief under the PCRA, Burton must show, as a threshold matter, that his allegations have not been waived. An allegation is deemed waived if Burton "could have raised it but failed to do so before trial, at trial, during unitary review [or] on appeal." 42 Pa. C.S.A. § 9544(b). To avoid a finding of waiver here, Burton presents, as he must, layered claims of ineffective representation. To that end, Burton avers that all prior counsel were ineffective for failing to challenge trial/appellate counsel's representation in the following ways: 1) failing to object to the jury instructions on the illegal possession a firearm charge; 2) failing to request a bifurcated trial; 3) failing to object to the jury instructions on accomplice liability; 4) failing to investigate and call certain witnesses; and 5) failing to challenge all of his convictions on direct appeal.

Counsel is presumed to have been effective. **See Commonwealth v. Brooks**, 839 A.2d 245, 248 (Pa. 2003). In order to overcome that presumption and prevail on a claim of ineffectiveness, Burton must establish that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his conduct; and (3) he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that because of the act

_____

[3] As noted above, Attorney Crisp represented Burton both at trial and on his first and second direct appeal.

or omission in question, the outcome of the proceeding would have been different. *See id*.[4]

Burton addresses his first two allegations of ineffectiveness together, which both relate to his illegal possession of a firearm conviction. In these two claims, Burton argues that all prior counsel were ineffective for failing to raise a claim challenging trial counsel's failure to object to the jury instruction on illegal possession of a firearm as well as to request a bifurcated trial on the illegal possession charge. His arguments in support of these contentions are less than clear. He does, however, repeatedly make the summary allegation that counsel's inactions unduly prejudiced him. We do not agree, and instead find that neither of these claims offer Burton any basis for relief.

One of the charges Burton faced at trial was the illegal possession of a firearm pursuant to 18 Pa. C.S.A. § 6105.[5] To prove Burton was guilty of Section 6105, the Commonwealth needed to prove Burton possessed a firearm

_____

[4] When a petitioner raises a layered ineffectiveness claim, our Supreme Court has stated that the petitioner must present an argument on the three prongs of the ineffectiveness test as to each layer of representation. *See Commonwealth v. Mason*, 130 A.3d 601, 619 (Pa. 2015). While Burton's brief is far from a model of how this should be done, we find he has presented sufficient argument regarding the three prongs so as to avoid a finding of waiver and allow for consideration of the merits of his claims. We note that when doing so, if trial counsel is found not to have been ineffective, subsequent counsel will not be deemed ineffective for failing to raise a claim regarding trial counsel's representation. *See Commonwealth v. Fletcher*, 986 A.2d 759, 785 (Pa. 2009).

[5] Section 6105's full title is "Persons not to possess, use, manufacture, control, sell or transfer firearms." 18 Pa. C.S.A. § 6105.

and that he had previously been convicted of one of 38 enumerated offenses, including aggravated assault, that prohibits him from possessing a firearm. *See Commonwealth v. Miklos*, 159 A.3d 962, 967 (Pa. Super. 2017); 18 Pa. C.S.A. § 6105(b).

Prior to trial, defense counsel stipulated that Burton had a prior conviction which made it illegal for him to possess a firearm under Section 6105. *See* N.T. Jury Trial, 1/24/11, at 7-8. The Commonwealth agreed to the stipulation. *See id.* at 7. The parties then agreed - and the trial court clarified - that there would not be any mention at trial of the specific offense for which Burton had been convicted - aggravated assault - that made him ineligible to possess a firearm. *See id.* at 8. The parties also agreed that the only issue for the jury to decide for purposes of the Section 6105 charge would be whether Burton actually possessed a firearm. *See id.*

On appeal, Burton does not contend that he does not, in fact, have an aggravated assault conviction or that such a conviction does not make him ineligible to possess a firearm under Section 6105. Nor does he point to any place in the record where the parties made any reference to the aggravated assault conviction at trial or elicited any testimony about that conviction. Instead, Burton first argues that he was prejudiced by counsel's failure to object to the court's charge on illegal possession of a firearm, in which the court told the jury:

> THE COURT: … The defendant is charged with former convict prohibited from having a firearm. The defendant has been charged

with former convict - to find the defendant guilty of this offense you must find the following elements have been proven beyond a reasonable doubt:

That the defendant was a person prohibited by law from possessing, using, controlling, selling, transferring, manufacturing or obtaining a license to possess, use, control, sell, transport or manufacture a firearm.

To be prohibited, the Commonwealth must show that the defendant at the time of this conduct had been convicted -

[PROSECUTOR]: I believe, Your Honor, that we -

THE COURT: - had been convicted of a crime under the statute, and the defendant on a date more than 60 days from the time he became a person prohibited by law from possessing, using, controlling, selling, transferring, manufacturing or obtaining a license to possess, use, control, sell, transfer or manufacture a firearm knowingly possessed or used or sold or transferred or manufactured or obtained a license to possess and use a firearm.

N.T. Jury Trial, 1/26/11, at 384-385.

Burton summarily asserts that he was unfairly prejudiced by counsel's failure to object to this instruction. However, as the PCRA court found and the Commonwealth argues, Burton suffered no such prejudice given that the trial court did not, "in what can only be assumed to have been an error by omission," even mention the stipulation, much less the underlying conviction, during the instruction. Commonwealth's Brief at 9. As such, the jury "never heard that [Burton] had a prior conviction that made him ineligible to possess a firearm." *Id.* There was no testimony about the prior conviction and it was not mentioned during the instruction. Given these circumstances, we fail to

see any error in the PCRA court's conclusion that Burton was not prejudiced by counsel's failure to object to this instruction.

To the extent Burton argues he was unfairly prejudiced by this charge because the court used "former convict prohibited from having a firearm" as opposed to "person not to possess a firearm," this Court has previously rejected a similar claim. In **Commonwealth v. Antidormi**, we held that a defendant is not prejudiced by a trial court's use of the term "felon not to possess a firearm" as opposed to "person not to possess a firearm." 84 A.3d 736, 754 (Pa. Super. 2014). We explained that:

> this Court has utilized the terms 'felon not to possess a firearm' and 'person not to possess a firearm' interchangeably to refer to identical conduct. Therefore, the terms … refer, interchangeably, to the Commonwealth's charge that, as a felon, [a defendant] illegally possessed a firearm.

**Id.** at 753 -754 (citations omitted).

The same reasoning applies to Burton's claim here, given that a former version of Section 6105 was titled "Former convict not to own a firearm, etc." **See** 18 Pa.C.S.A. § 6105 (effective June 6, 1973, subsequently amended June 13, 1995); **see also Commonwealth v. Gillespie**, 821 A.2d 1221, 1224 (Pa. 2003) (stating that the "clear purpose of § 6105 is to protect the public from convicted criminals who possess firearms"). We therefore reject any contention that counsel was ineffective for failing to object to the instruction because of the court's use of the term "former convict."

Burton also claims counsel should have requested a bifurcated trial on the illegal possession of a firearm charge. Although not entirely clear, it appears Burton is contending that counsel should have made such a request because of the "spillover prejudice" that occurred from the jury knowing that Burton was previously convicted of aggravated assault for purposes of the illegal possession charge when considering their verdict on the other five offenses. However, as explained above, counsel stipulated to the fact that Burton had a qualifying conviction and the parties agreed not to mention the specific offense underlying that conviction. Burton has not pointed to any place in the record where the jury heard anything about the aggravated assault conviction. We fail to see how this caused any "spillover prejudice" to Burton or how counsel's failure to request a bifurcated trial in light of the stipulation constituted ineffectiveness.[6]

_____

[6] Burton also tacks on a claim that trial counsel was ineffective for stipulating to the fact that Burton had an aggravated assault conviction. In the first place, this claim is not presented in Burton's statement of questions and it is waived for that reason. **See** Pa. R.A.P. 2116(a). Even if we were to overlook waiver, we note that, as explained above, Burton does not dispute that he had this conviction and that this conviction made him ineligible to possess a firearm. We fail to see how counsel's stipulation prejudiced him under the circumstances present here, where it appears the jury did not even hear of the stipulation, much less the specific offense (aggravated assault) underlying the stipulation. **And see Commonwealth v. Jemison**, 98 A.3d 1254, 1262 (Pa. 2014) (holding that a defendant does not suffer unfair prejudice merely by the admission of his certified conviction for a specific, identified, predicate offense offered to prove the prior conviction element of Section 6105). Burton simply does not offer any persuasive argument to the contrary.

Next, Burton maintains all prior counsel were ineffective for failing to argue trial counsel was ineffective for failing to object to the homicide charge based on accomplice liability. First of all, trial counsel did object to the court's instruction. *See* N.T., 1/27/11, at 417-418. Moreover, Burton does not explain what relief he hopes to secure by challenging counsel's representation in regards to his homicide conviction given that this Court has already vacated that conviction. No relief is due.

Burton also asserts all prior counsel were ineffective for neglecting to raise trial counsel's ineffectiveness for failing to investigate and call Fred Jones as a witness at his trial. According to Burton, he received a post-trial statement from Jones reporting that Jones had been with Lynch on the night of the shooting and had seen a man running away from the scene of the crime that did not look like Burton. Burton contends that had counsel called Jones to the stand and allowed the jury to hear his testimony, this would "have established the reasonable doubt necessary for an acquittal." Appellant's Brief at 48. This claim fails for several reasons.[7]

---

[7] The PCRA court found that this claim was previously litigated because it had been included in Attorney Tanski's supplemental PCRA petition and the PCRA court rejected the claim. The supplemental PCRA petition did not frame this issue as one of ineffectiveness but rather, one of after-discovered evidence. In any event, this Court effectively found on appeal that the PCRA court did not have jurisdiction to reach the issue based on Jones's statement after the PCRA court granted *nunc pro tunc* relief. Therefore, although the issue is not previously litigated, *see* Pa.C.S.A. § 9544(a), we agree with the PCRA court that it does not provide a basis for relief. ***See Commonwealth v. Price***, 876
*(Footnote Continued Next Page)*

In the first place, it does not appear from the record that Burton attached any statement by Jones to his PCRA petition, as required by 42 Pa. C.S.A. § 9545 (d)(1)(i) and Pa.R.Crim.P. 902(A)(15). Nor does Burton assert PCRA counsel was ineffective for failing to attach the statement. Burton does attach a hand-written statement, dated July 23, 2012, signed by a person named Jones, as an exhibit to his appellate brief. However, this statement is not verified, and it also does not provide Jones's address or date of birth as required by 42 Pa. C.S.A. § 9545 (d)(1)(i) and Pa.R.Crim.P. 902(A)(15).

Nonetheless, even if Burton had complied with these procedural requirements, we would not find this claim entitles him to any relief. Burton claims that counsel should have called Jones to the stand because, according to Jones's statement, Jones could have definitively established that Burton was not present at the scene of the crime. The statement reads in relevant part:

> I was out there with crackhead Jeff [Lynch]. … I know for a fact it wasn't you cuz the dude that ran outta the alley … was a light skinned dude with a gr[a]y hoodie on. And you're Black as fuck.

Appellant's Brief, Exhibit C.

In making his argument, Burton does not cite the standard applicable to claims alleging counsel's ineffectiveness for failing to call a witness to

---

A.2d 988, 993 (Pa. Super. 2005) (stating that this Court may affirm a PCRA court's denial of relief on a different basis than that provided by the PCRA court).

testify. To prove such a claim, Burton must show that: 1) Jones existed; 2) counsel was aware or should have been aware of Jones's existence; 3) Jones was willing and able to cooperate on behalf of Burton; and 4) the absence of the proposed testimony prejudiced him. *See Commonwealth v. Johnson*, 139 A.3d 1257, 1284 (Pa. 2016).

Even if Burton was able to show the first three elements of this standard,[8] we do not find he has established he was prejudiced by any failure to call Jones to the stand. Burton asserts that Jones's statement "completely removes [Burton] from any crime." Appellant's Brief at 44. He fails to explain, however, how the statement accomplishes that in light of the fact that Lynch and McCallister each testified that they saw two men, and Jones described only one of those two men.

In any event, Jones's proposed testimony regarding the description of the person he saw on the night of the shooting would have merely been cumulative of the description given by Rochon. As such, Burton cannot show prejudice and his ineffectiveness claim necessarily fails. *See Johnson*, 139 A.3d at 1284 (holding that Johnson had not suffered prejudice for purposes of his claim that counsel had been ineffective for failing to call witnesses, when

---

[8] Burton asserts trial counsel should have been aware of Jones. However, in his next claim, Burton asserts that Jones's statement constitutes after-discovered evidence, which requires him to show that the evidence could not have been obtained prior to trial by the exercise of due diligence. He cannot, of course, have it both ways.

those witnesses' proposed testimony that Johnson was not present at the crime scene would have simply been cumulative of the testimony of other witnesses); ***Commonwealth v. Gibson***, 951 A.2d 1110, 1134 (Pa. 2008) (stating that trial counsel will not be found ineffective for failing to call a witness whose testimony is merely cumulative of that of other witnesses).[9]

Burton also alleges he is entitled to relief on the basis of two statements, including Jones's, because they constitute after-discovered exculpatory evidence pursuant to 42 Pa.C.S.A. § 9543(a)(2)(vi). The PCRA court did not address this issue, as it was not included in Burton's *pro se* PCRA petition or counsel's supplemental petition. To the extent Burton claims on appeal his PCRA counsel was ineffective for failing to raise this issue, a recent decision by our Supreme Court allows us to review this claim. ***See Commonwealth v. Bradley,*** 261 A.3d 381 (Pa. 2021) (holding that a PCRA petitioner may, after a PCRA court denies relief, and when acting *pro se* on appeal from that denial, raise claims of PCRA counsel's ineffectiveness on appeal).

Burton claims that prior counsel, including PCRA counsel, were ineffective for failing to raise the claim that Jones's statement and the statement of Avery McCraw, which McCraw also provided after Burton's trial,

---

[9] In his PCRA petition, Burton also claimed counsel was ineffective for failing to call three other witnesses: Kristina Brandt, Erica Pannebaker and Sandra Miller. He abandons this claim on appeal.

were both after-discovered evidence that entitled him to relief pursuant to 42 Pa.C.S.A. § 9543(a)(2)(vi).[10] In the hand-written letter attached as an exhibit to Burton's brief, McCraw contends he was near the spot Granthon was murdered at the time of the murder. The statement seems to be missing some parts, perhaps even a page, but in essence McCraw maintains that he saw someone dressed all in black speed walking down Mulberry Street, and also saw a man in a gray-hooded sweatshirt with a gun in his hand. Neither this statement nor Jones's statement offers Burton relief as after-discovered evidence.

To obtain relief based on after-discovered evidence, Burton must show the evidence: 1) could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; 2) is not merely cumulative or corroborative; 3) will not be used solely to impeach a witness's credibility; and 4) is of such a nature that a different verdict will likely result if a new trial is granted. **See Commonwealth v. Foreman**, 55 A.3d 532, 537 (Pa. Super. 2012).

Here, in rejecting Burton's contention of after-discovered evidence as raised in Burton's 2014 supplemental PCRA petition, the PCRA court stated:

_____

[10] Burton acknowledges that Attorney Tanski raised this issue in the supplemental PCRA petition he filed on behalf of Burton, but Burton essentially seems to argue subsequent counsel improperly abandoned the issue after this Court held the PCRA court did not have jurisdiction to reach it. Separately, we also note that, although Burton uses the last name "McGraw," the name on the statement is "McCraw."

In the present case, two affidavits submitted by counsel indicate that there were two additional witnesses the night of the homicide. Avery McCraw sent [Burton] and his attorney at the time a letter on October 26, 2011. Subsequently, he verified the statement pursuant to 18 Pa.C.S. § 4904. A second letter by Fred Jones was received on July 23, 2012. It is not verified.

[Burton] must prove by a preponderance of the evidence that this evidence is not cumulative. Mr. McCraw's letter indicates he saw a man in black on the street at the time of the shooting. Jeffrey Lynch testified that he saw [a man] in black on the street at the time of the shooting. Mr. Jones's letter indicated he saw a 'light skinned dude.' Again, during trial, Georgio [  ] Rochon, [Burton's] own witness, testified that the person he saw at the scene of the murder was a "light-complected [B]lack man" and not [Burton]. Nothing in the letters/affidavits indicates any newly discovered evidence that was not presented to the jury.

Trial Court Opinion, 457 MDA 2015, 2/10/2015, at 4 (unpaginated) (citations and footnote omitted.)

While we found on appeal that we could not review this determination because the PCRA court did not have jurisdiction to decide this claim after it granted *nunc pro tunc* relief, **see Burton**, 457 MDA 2015 at * 7, we face no such impediment here. We see no error in the PCRA court's conclusion that the allegedly after-discovered evidence offered by Burton was merely cumulative of evidence presented at trial. We add only that McCraw's allegation that he saw a man in a gray-hooded sweatshirt with a gun at the scene of the murder was substantially cumulative of testimony provided by Lynch, McCallister and Rochon. No relief is due. **See Foreman**, 55 A.3d at 537.

In his final ineffectiveness claim, Burton alleges prior counsel were ineffective for failing to raise trial/appellate counsel's failure to appeal all of his convictions on direct appeal. He acknowledges that counsel challenged his homicide and conspiracy convictions on appeal, and that his homicide conviction was in fact vacated, but he asserts counsel should have also appealed the four other convictions. He maintains counsel's failure in this regard requires the restoration of his direct appeal rights *nunc pro tunc*. This claim fails.

In support of his contention, Burton cites only to cases which stand for the proposition that a petitioner is entitled to *nunc pro tunc* relief when counsel has completely deprived the petitioner of any opportunity to appeal his judgment of sentence by failing to pursue or perfect a requested direct appeal. ***See, e.g., Commonwealth v. Champney,*** 783 A.2d 837, 841 (Pa. Super. 2001) (holding trial counsel was ineffective for failing to file a requested notice of appeal, leaving the petitioner without any opportunity to appeal and entitling him to *nunc pro tunc* relief). This is not the situation here. Instead, trial/appellate counsel filed a direct appeal on behalf of Burton raising seven issues, two of which this Court found had merit. Therefore, Burton has simply not shown that any request he made of counsel to file a direct appeal was ignored or rejected by counsel, as he was required to do. ***See Commonwealth v. Maynard***, 900 A.2d 395, 397-398 (Pa. Super. 2006) (when making a claim that counsel was ineffective for failing to file a direct

appeal, the petitioner must plead and prove that he requested counsel to file a direct appeal on his behalf and counsel ignored or rejected that request).

Moreover, as the PCRA court found, Burton's direct appeal raised the claim that the verdict - in its entirety - was against the weight of the evidence. The PCRA court noted that Burton's appellate brief specifically stated that the "jury verdict finding [Burton] guilty on the above referenced charges was so contrary to the weight of the evidence presented at trial that a new trial is required." Appellant's Brief, 385 MDA 2011, 7/15/11, at 12. This Court considered, and rejected, this claim before granting Burton a new trial on the basis of one of the other claims raised by counsel. Based on all of these circumstances, Burton has failed to show the PCRA court erred by concluding this final claim of ineffectiveness does not warrant any relief.

Burton's last two issues are that he is entitled to relief because of the cumulative prejudicial effect of counsel's alleged errors and that he was entitled to an evidentiary hearing on his ineffectiveness claims. Both of these claims fail. **See Commonwealth v. Tedford**, 960 A.2d 1, 56 (Pa. 2008) (citation omitted) ("[N]o number of failed claims may collectively warrant relief if they fail to do so individually."); **Commonwealth v. Jones**, 942 A.2d 903, 906 (Pa. Super. 2008) (stating that no hearing is necessary if it can be determined without a hearing that any one of the three prongs of the ineffectiveness test cannot be met). As such, no relief is due on any of the claims raised by Burton.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/7/2022